UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| In re: | ) | Case No. 12-10111 |
|---|---|---|
| | ) | |
| JERRY CYNCYNATUS and | ) | Chapter 13 |
| DIANE L. CYNCYNATUS, | ) | |
| | ) | Chief Judge Pat E. Morgenstern-Clarren |
| Debtors. | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| | ) | **AND ORDER**[1] |

The debtors Jerry and Diane Cyncynatus filed a chapter 13 bankruptcy case. After the Chapter 13 trustee moved to convert the case to chapter 7 under Bankruptcy Code § 1307(c), and the court had set that motion for trial, the debtors moved instead to have their case dismissed under Bankruptcy Code § 1307(b).[2] The issue is whether § 1307(b) gives the debtors an absolute right to dismiss, regardless of whether they acted in bad faith in their bankruptcy case. For the reasons stated below, the court finds that the debtors do not have this absolute right and that the trustee proved that the debtors acted in bad faith. As a result, the debtors' motion is denied, the trustee's motion is granted, and the case is converted to one under chapter 7.

## JURISDICTION

This court has jurisdiction under 28 U.S.C. § 1334 and General Order No. 2012-7 entered by the United States District Court for the Northern District of Ohio on April 4, 2012. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O), and it is within the court's

---

[1] This opinion is not intended for publication, either electronic or print.

[2] Docket 39, 50, 110, 122.

constitutional authority as analyzed by the United States Supreme Court in *Stern v. Marshall*, 131 S.Ct. 2594 (2011).

## THE EVIDENTIARY HEARING

The court held an evidentiary hearing on June 6, 2013. The debtors presented their case through their own testimony, as well as cross-examination, and exhibits. The chapter 13 trustee presented his case through his own testimony as well as that of Alycia Charney (chapter 13 trustee case administrator) and Debra Sandifer (chapter 13 case analyst), together with cross-examination, and exhibits. The parties also filed post-trial briefs.[3]

The findings of fact set forth below are based on that evidence and reflect the court's weighing of the evidence presented, including determining the credibility of the witnesses. "In doing so, the Court considered the witness's demeanor, the substance of the testimony, and the context in which the statements were made, recognizing that a transcript does not convey tone, attitude, body language or nuance of expression." *In re The V Companies*, 274 B.R. 721, 726 (Bankr. N.D. Ohio 2002). *See* FED. R. BANKR. P. 7052 (incorporating FED. R. CIV. P. 52).

## DISCUSSION

**A.  Do the Debtors Have an Absolute Right to Dismiss in the Face of Allegations of Bad Faith?**

In response to the trustee's motion to convert the case to chapter 7, the debtors moved to dismiss. Bankruptcy Code § 1307 provides (in relevant part) for conversion or dismissal of a debtor's chapter 13 case:

\*     \*     \*

---

[3] Docket 124, 125.

> (b) On request of the debtor at any time, if the case has not been converted under section 706, 1112, or 1208 of this title, the court shall dismiss a case under this chapter. Any waiver of the right to dismiss under this subsection is unenforceable.
>
> (c) Except as provided in subsection (f) of this section, on request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause . . .

11 U.S.C. § 1307(b) and (c). "These two provisions – i.e., that the court 'shall' dismiss a case on request of the Chapter 13 debtor, but that the court also 'may' convert a Chapter 13 case to Chapter 7 'for cause' – can conflict where . . . [in a case such as this] a debtor requests voluntary dismissal, while, on the other hand, . . . the trustee moves to convert[.]" *Rosson v. Fitzgerald (In re Rosson)*, 545 F.3d 764, 771 (9th Cir. 2008). Therefore, the first issue to be addressed is whether § 1307(b) gives the debtors the unqualified right to dismiss their case.[4] If so, their motion to dismiss must be granted, making the trustee's conversion request moot.

Despite the seemingly unqualified language used in § 1307(b) regarding a debtor's right to dismiss a chapter 13 case which was not previously converted, courts are divided on the issue of whether the right to dismiss is subject to an exception for bad faith or abusive conduct. Much of the debate on this issue focuses on the implications of the Supreme Court's decision in *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365 (2007). There, the Court held that a debtor's right to convert a chapter 7 case to chapter 13 under § 706(a) is qualified and may be forfeited due to such conduct. The two Circuit Courts to address the issue post-*Marrama* have

---

[4] The § 1307(b) restriction against voluntarily converting a case which was previously converted to Chapter 13 does not apply here.

3

concluded that a debtor's right to dismiss under § 1307(b) is also qualified and can be forfeited based on a debtor's bad faith conduct or abuse of the bankruptcy process. *Jacobsen v. Moser (In re Jacobsen)*, 609 F. 3d 647, 660 (5th Cir. 2010); *In re Rosson*, 545 F.3d at 774-75. Both courts found that "*Marrama's* 'rejection of the absolute right theory as to § 706(a) applies equally to § 1307(b)' because 'there is no analytical distinction' between the two statutes." *In re Jacobsen*, 609 F.3d at 660 (quoting *In re Rosson*, 545 F.3d at 773). A number of lower courts, on the other hand, have considered *Marrama,* found that it does not speak to § 1307(b), and concluded that § 1307(b) provides an absolute right to dismiss. *See, for example, In re Williams*, 435 B.R. 552, 555 (Bankr. N.D. Ill. 2010) (collecting cases and noting that most reported decisions have held that chapter 13 debtors have the unqualified right to dismiss an unconverted case). The Sixth Circuit has not taken a position on this issue. The Circuit's pre-*Marrama* decision *Copper v. Copper (In re Copper)*, 426 F.3d 810, 816 (6th Cir. 2005), however, suggested that the use of the term "shall" in § 1307(b) distinguishes it from § 706(a).

In the absence of controlling authority in this Circuit, and given that the only two Circuit Courts to consider this issue have concluded that the Supreme Court's reasoning in *Marrama* extends to § 1307(b), this court will follow *Jacobsen* and *Rosson* and determine that the debtors do not have an absolute right to dismiss their case in the face of allegations that they have acted in bad faith or abused the bankruptcy process. The trustee now has the burden of proving that the debtors' behavior warrants converting the case to chapter 7. *See Alt v. United States (In re Alt)*, 305 F.3d 413, 420 (6th Cir. 2002) (assigning the burden of proving a debtor's lack of good faith under § 1307(c) to the party seeking relief).

4

B. **Did the Trustee Prove that the Debtors Acted in Bad Faith?**

1. **The Debtors' Proposed Plan and Proposed Modification to It**

The debtors filed their case on January 8, 2012 and offered a dividend to their unsecured creditors of the greater of 1% or $800.00. After the trustee held the meeting of creditors,[5] he filed an objection to confirmation.[6] The objection identified these issues:

1. The debtors owned a Florida timeshare that had not been disclosed.

2. The debtors transferred real estate on East Miner Road, Mayfield Heights, Ohio before they filed the case in an effort to convert a non-exempt asset to an exempt asset (i.e., their residence), showing lack of good faith. Also, despite the transfer, the debtors did not actually live at the Miner Road property.

3. The debtors failed to devote all of their projected disposable income to the plan.

4. The debtors failed to account for proceeds from the 2011 sale of inherited property in Florida.

5. The plan did not provide unsecured creditors with at least as much as they would receive in a chapter 7 case.

Separately, the trustee objected to the debtors' attempt to claim a homestead exemption for the Miner Road property because, the trustee alleged, they did not live there when they filed the case or at the time of the meeting of creditors.[7]

---

[5] *See* 11 U.S.C. § 341(a).

[6] Docket 18, exh. H.

[7] Docket 19.

On June 12, 2012, the trustee filed his motion to convert the case to chapter 7, arguing that the debtors had substantial non-exempt assets–equity in the Miner Road property and previously undisclosed cash on hand–which should be distributed to creditors. A few days later, the debtors' counsel moved to withdraw on the grounds that Jerry[8] had not told him that he had owned a one-half interest in inherited property or about its sale in 2011. Additionally, Jerry did not tell him about cash he had on hand as of the filing date which included proceeds from that sale. He stated that, as a result, he had to withdraw from the representation.[9] The debtors did not oppose the motion and the court granted it.[10]

On October 22, 2012, through new counsel, the debtors proposed a modified plan in which they offered unsecured creditors the greater of 20% or $12,000.00.[11] The trustee raised or renewed these issues in his objection:[12]

1.Schedules B and D should be amended to disclose the debtors' interest in a Florida timeshare and vehicles, as well as to list lienholders.

2.By the manner in which the debtors listed a mortgage lienholder and real estate taxes, they were improperly trying to accelerate payments on a note secured by a mortgage to the detriment of the unsecured creditors.

---

[8] Because the debtors have the same last name, the court will use their first names to avoid confusion.

[9] Docket 41.

[10] Docket 54.

[11] Docket 76.

[12] Docket 83, 84.

3. The debtors needed to provide income tax returns for 2011 and pay advices for 2012. Without them, the trustee could not resolve the projected disposable income issue.

4. Issues remained with the transfer of the Miner Road property, which could only be resolved by offering a 100% dividend.

5. Based on bank statements newly provided to the trustee, the debtors were improperly paying for a Florida timeshare and a vehicle outside the plan.

6. The prepetition Miner Road property transfer showed lack of good faith.

On November 30, 2012, the debtors filed a motion to modify their plan, and also amended schedules A, D, I, and J and summary of schedules.[13] While the debtors maintained the same offer to unsecured creditors, this time they disclosed the Florida timeshare and added the creditor holding a secured interest in that property. The trustee again objected,[14] renewing his earlier objections and adding to the lack of good faith argument:

1. The debtors had $5,000.00 in a bank account at the petition date that they did not disclose.

2. The debtors failed to disclose the Florida timeshare.

3. After the trustee discovered that the debtors earn more income than they disclosed, they amended their schedules to increase their expenses.

4. The debtors stated under penalty of perjury in their petition that they lived in the Miner Road property, when they did not.

---

[13] Docket 89, 90.

[14] Docket 95.

7

On January 9, 2013, when the parties could not settle their differences, the court set an evidentiary hearing date of June 6, 2013, leaving time for discovery. On May 22, 2013, the debtors moved to dismiss their case. The court heard both the trustee's motion and the debtors' motion on June 6, 2013.

## 2. The Hearing Evidence

### A. The Debtors' Residence at the Time of Filing

Although the debtors listed their residence as Miner Road, they actually lived at 4289 Brainard Road, Orange, Ohio on the petition date. The Brainard Road property had a fair market value of about $244,000.00 secured by about $438,000.00 in debt, leaving no equity.[15] The Miner Road property had a fair market value of $95,000.00,[16] which secures about $34,000.00 in debt, leaving about $61,000.00 in equity for creditors unless the debtors are entitled to a homestead exemption.[17]

Jerry took title to the Miner Road property in 2006 via a general warranty deed. In January 2010, he transferred the property to Homesavers Network, LLC, a company solely owned by him, for $10.00. The warranty deed provided that Diane released her dower rights. Nine days before filing the bankruptcy, Jerry transferred the property to Diane and to himself, for no consideration. Jerry transferred the house to maximize their ability to claim a homestead exemption because the Miner Road property had equity, while the Brainard Road property did

---

[15] Docket 1, Schedule A; Docket 89, Amended Schedule A.

[16] Docket 119, 124.

[17] Docket 1, Schedule A; Docket 89, Amended Schedule A.

8

not.[18] They did not move to Miner Road until May 2012, about four months after they filed. Although Jerry testified that they did not move until they completed renovations, the evidence showed that the alterations were minor and should not have precluded the debtors from living in the house. Instead, the court concludes that they chose to remain in the (more expensive) Brainard Road house until the secured creditor moved for relief from stay.

The debtors scheduled Jerry's ownership interest in Homesavers as an asset with no value because the Miner Road property transfer made Homeowners insolvent. Jerry was also insolvent when he transferred the property.

B.   The Florida Inherited Real Estate

In 2006, Jerry and his sister inherited Florida property from their parents. They apparently shared the cost of maintaining the property for some time until Jerry could no longer afford it. At that point, his sister paid his share. They sold the property in May 2011. Jerry paid his sister $3,200.00 to reimburse what she paid earlier on his behalf. The debtors did not disclose the ownership, the sale, the transfer to Jerry's sister or the remaining sale proceeds when they filed their bankruptcy case.

C.   The Florida Timeshare

At the time of filing, Jerry owned an interest in a Florida timeshare that he did not disclose. The trustee uncovered the asset during the meeting of creditors. Jerry testified that his former attorney told him not to schedule this asset; the court did not believe this testimony. Jerry made undisclosed monthly payments of $1,200.00 on this debt until June 2012, at which time he testified that he could no longer afford to make the payments. According to an earlier filed

---

[18] *See* 11 U.S.C. § 522.  Schedules A and C.

9

response to the trustee's objection, the reason he could no longer afford it is because his attorney told him that he had to increase his plan payments by the $1,200.00.[19]

D. The Cash on Hand at the Time of Filing

The debtors stated in their petition that they had $500.00 in cash and checking accounts. They failed to disclose that they actually had about $8,000.00. This amount consisted of $1,480.59 in bank accounts and $6,425.28 in funds remaining from the sale of the inherited property (about $4,000.00 of which they spent before July 13, 2012 and $2,425.28 of which they still held on that date).

E. Jerry's Employment

At the time of filing, Jerry had worked as a loan officer at RBS Citizens for five years. At trial, he testified that he quit his job on April 24, 2013 because he was not bringing enough money home to support himself. Because he left the job voluntarily, he is not eligible for unemployment compensation. He would not be able to make the required chapter 13 payments unless he finds another job and, as of the date of trial, he had no new employment.

Diane's testimony followed Jerry's. Under cross-examination, she admitted that after Jerry quit his job he immediately started working doing loan closings for her employer. The court believes this testimony and does not believe what Jerry said earlier in the trial.

3. The Totality of the Debtors' Circumstances

The Sixth Circuit applies a "totality of the circumstances" analysis to determine whether a debtor has acted in good faith. *See In re Copper,* 426 F.3d at 815 (noting that a good faith determination is fact specific and flexible); *In re Alt*, 305 F.3d at 419 (looking at the totality of

---

[19] Docket 88.

10

12-10111-pmc    Doc 126    FILED 07/24/13    ENTERED 07/24/13 09:12:26    Page 10 of 12

the circumstances to determine a debtor's good faith under § 1307(c)); *Society Nat'l Bank v. Barrett (In re Barrett)*, 964 F.2d 588, 591 (6th Cir. 1992) (noting that a determination under § 1325(a)(3) as to a debtor's good faith in proposing a plan must be made after considering the totality of the circumstances).

The following non-exhaustive list of factors are appropriately considered in determining a debtor's good faith in filing a chapter 13 case: (1) the nature of a debtor's debt, including whether the debt would be nondischargeable in a chapter 7 case; (2) the timing of the filing of the petition; (3) how the debt arose; (4) the debtor's motive in filing; (5) how the debtor's actions affected creditors; (6) debtor's treatment of creditors before and after filing; and (7) whether the debtor has been forthcoming with the bankruptcy court and creditors. *In re Alt*, 305 F.3d at 419-20 (citing *In re Love*, 957 F.2d 1350, 1357 (7th Cir. 1992)). These same factors are relevant when analyzing whether a debtor's motion to dismiss should be denied for bad faith. *Mitrano v. United States (In re Mitrano)*, 472 B.R. 706, 710 (E.D. Va. 2012). Additional factors to be considered include: the debtor's income and expenses; the debtor's attorney fees; the anticipated duration of the plan; the debtor's sincerity in seeking relief; the debtor's earning potential; any special circumstances, such as unusually high medical expenses; the frequency with which the debtor has sought bankruptcy relief; the circumstances under which the debtor's debt was incurred; the amount of payment being offered; the burden which administration would place on the trustee; and the statutorily-mandated policy of construing bankruptcy provisions in favor of the debtor. *In re Grischkan*, 320 B.R. 654, 658-59 (Bankr. N.D. Ohio 2005) (citing *In re Alt*, 305 F.3d at 419-20).

In this case, the totality of the circumstances firmly establish that the debtors filed and proceeded with their bankruptcy case in bad faith. They did not tell the truth in their initial filing about their residence, the amount of cash they had on hand, the fact that Jerry owned a Florida timeshare, or Jerry's sale of the inherited Florida property and their continued possession of some of the sale proceeds. As to the residence, the court concludes that the debtors did not intend to move to the Miner Road property unless they had to, a circumstance that arose when the creditor holding a secured interest in the Brainard Road property forced their hand by filing a motion for relief from stay. Thus, they did not have a good faith basis for claiming a homestead exemption in the Miner Road property. The deception continued when the debtors made undisclosed payments on the note secured by the Florida timeshare, stopping only when the trustee uncovered the payments. Additionally, Jerry lied when he testified at trial that he had not found new employment, thus deliberately underplaying his ability to fund their chapter 13 plan and suggesting that they had to dismiss their case for that reason. There are no special circumstances that would counterbalance these actions and failures to act. In short, these debtors acted in bad faith when they filed their bankruptcy case and continued in that spirit throughout. As a result, their case will be converted to chapter 7 and their assets administered under the supervision of a chapter 7 trustee.

## CONCLUSION

The debtors' motion to dismiss is denied and the trustee's motion to convert to chapter 7 is granted.

IT IS SO ORDERED.

_____
Pat E. Morgenstern-Clarren
Chief Bankruptcy Judge

12